NEBRASKA SEED CO. et al.

v.

UNITED STATES.

No. 50274.

United States Court of Claims.

Dec. 1, 1953.

O. L. Dykstra, Des Moines, Iowa, for plaintiffs. Walter R. Brown, St. Louis, Mo., was on the briefs.

John A. Rees, Washington, D. C., with whom was Asst. Atty. Gen. H. Brian Holland, for defendant. Andrew D. Sharpe, Ellis N. Slack, and Joseph H. Sheppard, Washington, D. C., were on the brief.

Before JONES, Chief Judge, and LITTLETON, WHITAKER, MADDEN and HOWELL, Judges.

WHITAKER, Judge.

The plaintiff, Nebraska Seed Company, in 1944 sold certain of its assets to

the Yankton Realty Company and the Ralston Operating Company, payment to be made on the installment basis. Taxes on the income received on the installments were correctly reported by Nebraska Seed Company for each year thereafter to and including June 30, 1947.

One month later, on July 31, 1947, the Nebraska Seed Company transferred all of its assets to plaintiff, United Seeds, Inc., in return for shares of the capital stock of United Seeds, Inc. The Nebraska Seed Company then distributed this stock to its stockholders, and went out of business. At this time there was a deferred profit on the installment sales of $45,338.39.

In its income tax return for the short period from June 30, 1947 to July 31, 1947, Nebraska Seed Company did not report as income the deferred profit on these installment sales, and, not having done so, its return showed a net loss of $72,038.33. It then filed claims for refund of taxes paid for the fiscal years ending June 30, 1946 and June 30, 1947, by reason of the carry-back to those years of the losses sustained in the period June 30, 1947 to July 31, 1947. These claims for refund were allowed. Later, however, the Commissioner of Internal Revenue determined that the deferred profit on these installment sales had been realized by the Nebraska Seed Company at the time it transferred its assets to United Seeds, Inc., which reduced the net loss it had claimed by the sum of this deferred profit, amounting to $45,338.39. Deficiencies were accordingly assessed and paid. Claims for refund were filed by the taxpayer, which were denied, and this suit was brought.

The question presented is whether or not the Nebraska Seed Company realized a taxable gain when it transferred the balance due on the installment sales to United Seeds, Inc. Plaintiff claims that it did not, by reason of the provisions of section 112(b) (4), 26 U.S.C., of the Internal Revenue Code. This section reads in part:

"(b) *Exchanges solely in kind.*—

\* \* \* \*

"(4) \* \* \* No gain or loss shall be recognized if a corporation a party to a reorganization exchanges property, in pursuance of the plan of reorganization, solely for stock or securities in another corporation a party to the reorganization."

The defendant concedes that the reorganization in this case comes within the provisions of the above-quoted portion of section 112, and it seems also to concede that this section is a limitation on the provisions of section 44(d) of the Internal Revenue Code, which deals with gain or loss upon disposition of installment obligations.

Whether or not defendant does concede this, we think section 112(b) is a limitation on section 44(d). It is so stated in the Regulations of the Bureau of Internal Revenue in section 29.44–5 (Regulations 111), which reads in part:

"\* \* \* The entire amount of gain or loss resulting from the disposition or satisfaction of installment obligations, computed in accordance with section 44(d), is recognized under the Internal Revenue Code unless the disposition is within one of the exceptions made by the Code. *Such an exception is provided* in Section 44(d) with respect to distributions under Section 112(b) (6), and *in Section 112(b) (4) and* (5) with respect to exchanges." [Italics ours.]

The decisions of the Board of Tax Appeals (now the Tax Court) in Charles F. Meagher, 20 B.T.A. 68; and Wobbers, Inc., 26 B.T.A. 322, support this Regulation. The First Circuit in Portland Oil Co. v. Commissioner, 109 F.2d 479, 486, certiorari denied 310 U.S. 650, 60 S.Ct. 1100, 84 L.Ed. 1416, held that section 112 (b) (4) was a limitation on section 44 (d). The court said:

"We think that Section 44(d) must be read in conjunction with Section 112, and that if by Section

112 the transaction is a tax-free exchange, it is nonetheless so because the property exchanged is an installment contract. That this was the intention of Congress is apparent from the following statement appearing both in the Senate and House committee reports on the subject of Section 44(d): 'Whether or not the gain or loss realized under the section is recognized for tax purposes, depends upon general principles of law embodied in the income tax provisions, the exchange of installment obligations in connection with tax-free exchanges, for instance, being cared for by section 112.' (H.Rep. No. 2, 70th Cong., 1st Sess., p. 16; S.Rep. No. 960, 70th Cong. 1st Sess., p. 24.)"

The Seventh Circuit in Advance Aluminum Castings Corp. v. Harrison, 158 F.2d 922, held that section 44(d) must be read in the light of section 112.

The House Committee in charge of the bill was of this opinion. The last sentence of section 44(d) was added by the Revenue Act of 1938, 52 Stat. 447. Concerning this sentence the Report of the House Ways and Means Committee, No. 1860, 75th Cong. 3rd Sess., page 29 said:

"The 1936 Act requires the recognition of the entire amount of gain or loss resulting from the disposition of installment obligations, as computed under section 44(d) thereof, unless the disposition is within one of the exceptions made by the Act. *Such an exception is provided in Section 112(b) (4)* and (5) but not in section 112(b) (6) (relating to tax-free liquidations)." [Italics ours.]

It then discusses the last sentence of 44(d), and concludes:

"In case an installment obligation is distributed in a tax-free liquidation of a corporation under section 112(b) (6) of the bill, the recipient corporation is required, under section 113(a) (15), to take the distributing corporation's basis and is required to report the profit upon the obligation received in the same manner as the distributing corporation would have been required to report it if such liquidation had not occurred. *This accords with the treatment of the tax-free exchanges described in section 112(b) (4)* and (5) of the existing law." [Italics ours.]

It would thus appear that the Internal Revenue Bureau, the courts, and Congress are unanimous in their view that section 112 is a limitation on the provisions of section 44(d).

The Government, however, calls attention to an unusual feature of this case. It says that at the same time that United Seeds, Inc., acquired all the assets of the Nebraska Seed Company, it also acquired all of the assets and assumed all of the liabilities of the Yankton Realty Company and the Ralston Operating Company. Upon such acquisition, the liability of the Yankton Realty Company and the Ralston Operating Company to the Nebraska Seed Company on the installment contracts was wiped out. Therefore, it says that at that time the deferred profit on these installment sales of $45,338.39 was realized.

■ We think defendant's position is correct. At the time the installment sales were made, the seller realized a profit on the transaction, which under pre-existing law it was required to report, if it made its returns on the accrual basis, although the profit had not been actually received. This seemed to place upon the taxpayer an unreasonable burden, because frequently installment obligations were not satisfied in full; and the Commissioner of Internal Revenue attempted by Regulations to relieve the seller of this hardship; but the Board of Tax Appeals in a number of decisions held that such Regulations were invalid, and that the entire profit had to be reported by an accrual-basis taxpayer, although it would be realized over a period of years. Later, Congress permitted a seller to defer reporting income on an installment sale until the installments were paid, but certain tax-

payers took advantage of this provision by disposing of the unpaid installments, thus realizing the profit in one year, but reporting the profit as if it had been received over the several years in which the installment payments were to be made. To take care of this Congress enacted in 1928, 45 Stat. 791, section 44 (d), which was the precursor of section 44(d) of the Internal Revenue Code, 26 U.S.C., 1946 ed. This was enacted for this purpose, according to House Report No. 2, 70th Cong. 1st Sess., page 16:

" * * * To prevent the evasion the subsection terminates the privilege of longer deferring the profit if the seller at any time transmits, distributes, or disposes of the installment obligations and compels the seller at that time to report the deferred profits. * * *"

The general purpose of the Congress evidently was to require a taxpayer to report the deferred profits on an installment sale when that profit was realized. That was undoubtedly done when the asset received from the Nebraska Seed Company by United Seeds, Inc., was offset by the liabilities assumed by United Seeds, Inc., when it acquired the assets of the Yankton Realty Company and the Ralston Operating Company.

However, that deferred profit was never received by Nebraska Seed Company. It was never paid to it, nor did the Nebraska Seed Company ever acquire the assets of the Yankton Realty Company and the Ralston Operating Company, nor assume the liabilities of those companies. It was United Seeds, Inc. which assumed the liabilities of the Yankton Realty Company and the Ralston Operating Company. The installment obligations of these companies were, therefore, never satisfied until after the reorganization was completed, and when it was completed, the debt owing to the Nebraska Seed Company by the Yankton Realty Company and the Ralston Operating Company was the property of United Seeds, Inc., and it was the United Seeds, Inc. which assumed the liabilities of the Yankton Realty Company and the Ralston Operating Company, thus extinguishing the liability on the installment obligations.

The deferred profit, therefore, was realized not by Nebraska Seed Company, but by United Seeds, Inc.

The Commissioner of Internal Revenue assessed against the Nebraska Seed Company the deficiency resulting from the treatment of the deferred profit on the installment sales as having been received by the Nebraska Seed Company at the time of the reorganization. This was wrong. However, included in the assets transferred to United Seeds, Inc., by the Nebraska Seed Company was the right to recover the tax erroneously assessed against the Nebraska Seed Company. Since United Seeds, Inc., is the company now entitled to receive any refund of these taxes, and since it was this company in whose hands the balance due on the installment sales was satisfied, and who, if any one, owes the tax on the profit, this company should not be permitted to recover this refund.

It may be that if the tax were now assessed against United Seeds, Inc., it might not amount to exactly the same sum as that assessed against Nebraska Seed Company. If there was a difference, the burden of showing this was on plaintiffs.

On the case as presented, it seems to us that plaintiffs' petition must be dismissed.

JONES, Chief Judge, and MADDEN and LITTLETON, Judges, concur.